The next case is 21-1, Mcgirt v. Mcgirt v. Mcgirt v. Mcgirt v. Mcgirt v. Mcgirt v. Mcgirt The next case is 70-48, United States v. Mcgirt. Mr. Lee. Good afternoon, your honors. Josh Lee for the appellate Jim C. Mcgirt. Mr. Mcgirt was accused of heinous crimes. But like everybody else, he deserved a fair trial and one that was reasonably error free. He did not get that. Instead, the judge committed a serious evidentiary error that pervasively undermined his defense. The district court's serious error was instructing the jurors over the defense's objection that they could only consider the prior inconsistent testimony of the prosecution's witnesses from the previous trial, that they could only consider that for purposes of impeachment and not as substantive evidence. That instruction was wrong because under federal rule of evidence 801 D1A, prior inconsistent testimony is not hearsay and thus can be used as substantive evidence. The government makes just a half-hearted defense of the instruction on the merits and instead primarily seeks affirmance on the ground that any error was harmless. But this court should hold that the government has not met its burden to show that the error was harmless. One of the main reasons you know that is because of the pervasive impact of the error. The judge's instruction that you couldn't consider the prior testimony as substantive evidence affected 28 passages of prior testimony that defense counsel read into the record. This was presented multiple times through all three of the major witnesses in the case. You can look at the government's brief to appreciate the pervasive impact of the error. They described the prior testimony excerpts that the judge's instruction affected as, quote, copious. And they describe in their brief using the prior inconsistent testimony as, quote, the main defense strategy. So this erroneous instruction, according to the government, affected a copious amount of defense evidence that went to the heart of their strategy. I'm trying to figure out how the jury would think differently if it were instructed correctly. Because the jury would hear all this and it could say, yeah, that prior statement was true. So what? So I know that the witnesses who testified to the contrary are lying. Let me read you a famous quote. To tell a jury it may consider the prior testimony as reflecting on the veracity of the later denial of relevant knowledge, but not as the substantive evidence that alone would be pertinent, is a demand for mental gymnastics of which jurors are heavily incapable. You smile like you're familiar with that. I'm very familiar with it. I have argued that quote numerous times, and it's not the law on the Tenth Circuit. But the only way it makes a difference is when the party with the burden of persuasion doesn't get the benefit of the correct instruction. So it makes a huge difference in this case. First, I'll say that— OK, explain why it doesn't require mental gymnastics. First, let me say that we assume—and I've been on the other side of this, so I know—we assume that jurors follow this instruction, and that they will consider it as substantive evidence if you tell them that they can, and will consider it only as impeachment if you tell them that's all they can do. Now, I understand what you're saying about, well, if this were the government, it would make a difference because the government has the burden of proof. But in this case, Mr. McGirt's defense was to prove what happened in 1997. So I'll give you an example. The grandmother in 1997 testified, I was with B.C. the whole week. I gave her a bath every night. I spent time around. She never acted like someone who was going through anything like this. If the jury believed that, it makes it less likely that Mr. McGirt did this regardless of anyone's credibility. It does not—so if you say—just like that is affirmative evidence for his defense that he didn't do this. Another example. The prior inconsistent testimony was that the uncle was in the home a large amount of the time that this abuse allegedly occurred. This was one piece of evidence that went to Mr. McGirt's affirmative case that he lacked the opportunity to do this. Let me interrupt you for a moment. Are you saying that there was evidence beyond the witness testimony that showed—that went to his guilt? If you're saying—if you believe his earlier testimony, then you wouldn't believe—not just you wouldn't believe the testimony of the witnesses. You wouldn't believe some documentary evidence, some real evidence, ballistic testimony or something like that. Was there anything like that going on here? There was not, but I guess what I'm driving at is— So the case is built on the jury believing certain witnesses. Why? The reason that they shouldn't believe them is because they should believe the 1997 testimony for the truth of the matter asserted. Let me say this a different way. So the testimony from the grandmother from 1997 that she didn't notice any physical or behavioral manifestations of abuse. Under the district court's instruction, all the jury could say is, well, the grandmother is contradicting herself. So we're just going to throw her testimony out altogether. If the jury is allowed to consider it for the truth of the matter asserted, then the jury can say, I'm not sure I can believe B.C.'s testimony. Because the grandmother's statement is she never showed any behavioral or physical manifestations of abuse at the time. You're saying if that were admitted for the truth, then not only would you impeach the later testimony of the same witness, but it would undermine other witnesses' testimony. That's one example. Yeah, that's right. Yeah. So I don't think you can, under the judge's instruction, define impeachment that way. Because let's say that the prosecution presents these three witnesses, and then Mr. McGirt presents DNA evidence proving that he didn't do it. You could say, well, the prosecution only has these witness testimonies, so the DNA evidence is just impeachment. But that's not how we generally think about impeachment, and that's not what the judge's instruction was talking about. Mr. McGirt wanted to prove, as a factual matter, what happened in 1997. And the judge said, you can only consider it as these witnesses are contradicting one another, and therefore just throw their testimony out entirely. So Mr. McGirt wants to— But if you threw out all their testimony, you'd have to acquit, would you not? That's true. That's true. But what this instruction didn't allow them to do—I'll go back to the grandmother's testimony. Under the instruction, the grandmother's helpful testimony that B.C. was gone with her father a lot of the time while her mother was away, the jury can't weigh that against B.C.'s testimony, B.C.'s mother's testimony. So it would only be that the grandmother is— What was the exact language of the instruction? You can only use it to impeach that witness? Yeah. So the earlier statements were brought to your attention only— You're reading from the instruction? Yes, I'm reading from the instruction. Okay. The earlier statements were brought to your attention only to help you decide how believable their testimony in this trial was. You cannot use it as proof of anything else. You can only use it as one way of evaluating their testimony here in court. And you're saying the way to interpret that is it's only used to impeach the credibility of the witness who made the prior statement? That's right, and only to impeach it on the ground that they're contradicting themselves. Okay. So again, I think that basically these 28 prior instances of testimony, they supported Mr. McGirt's defense in three basic ways. First one I've talked about—well, I've talked about the first two. No physical or behavioral manifestations of abuse. Supported the defense's case that Mr. McGirt lacked the opportunity to commit this crime. And that's especially important when you consider it in light of other evidence. So the prior inconsistent testimony was she stayed with her father for three of the days. There was other testimony that the grandmother was home for three of the days and that the uncle was in the house and that another girl, A.W., was also at the house at the time. So when you roll everything together, including the prior inconsistent testimony, you have a pretty good lack of opportunity defense. Then the prior inconsistent testimony also supported the defense's theory of suggestion and false memory. So we have B.C.'s prior inconsistent testimony that her mother told her what to say. The grandmother, Ms. Blackburn's prior inconsistent testimony that the mother, Ms. Cuswain, harbored an intense hostility to Mr. McGirt long before any of this happened. Then you have Ms. Cuswain's prior inconsistent testimony that she discussed these allegations with B.C. over and over. You add that, and again, the government bears the burden of proving that this error did not affect the trial. You add this prior inconsistent testimony that would have favored the defense to the existing weaknesses in the prosecution's case. There was no physical or medical evidence to support the charges. The testimony of the only witness to this was the testimony of the alleged victim, who was three and four years old at the time. And I think that the reliability of memories from that age are very questionable. Then you have the testimony of the mother, who had a preexisting grudge against Mr. McGirt and may have inadvertently suggested these allegations through an iterative process where she projects her concerns onto B.C. and B.C. reflects them back. What about the, I mean, did it affect at all what I, probably the most damaging evidence, which is the prior sexual offenses with minors and the fact that he had just recently been released from prison term for that? I'm really glad you brought this up because those prior convictions, the jury never heard them. They were excluded from the trial. Okay, I thought they did. So, right. Either time. What's that? In either case. In either case? Or, I'm sorry. Yeah, so they were excluded from the state trial and then they were also excluded from, so the jury never heard about that. Okay. So, all we have basically, as Judge Hartz was suggesting, all we had was this testimony without really any corroboration. And so, I think, you know, as I said in my reply brief, it's unfortunate that we may have to try this case again, but given the obviousness of this error, defense counsel's effort to bring it to the judge's attention, and the pervasive impact, I think that we have to, and I'll preserve the remainder of my time unless there are further questions. Ms. Epperly, I'll make a confession. I was, I felt strongly there was harmless error here, but I'm not so far from convinced at this point. Tell me why it didn't make a difference for the reasons Mr. Lee. You've got a tough, I don't, I feel sorry for you. You have to argue harmless error is, it's not easy, but tell me, tell me why it didn't make a difference that this, these earlier statements couldn't be used for the truth of the matter. Harmless error can be difficult to argue, Your Honor, and I'm Linda Epperly. I'm here for the United States. However, what you have in this case, that I can't recall having in another harmless error case, is that in this case, there was a jury who considered all of this evidence for its substantive purpose in 1997. They did not find it convincing, and they came back and recommended a sentence of a thousand years plus life. That's not really, that's not really relevant here, though, is it? It's relevant in that. What we're, what we're concerned with here is the contradictory testimony, the prior inconsistent statements, and what those statements should have been considered for, what purposes they should have been considered for here. Right, and to that. I don't think it matters that we've got the prior conviction at this point. I agree, Your Honor, that it doesn't matter that the prior conviction would completely shut this down, but I do believe that it is important to look at in terms of what a jury would do with that information. We have no idea what they'd do with it. They didn't get it. I'm sorry, Your Honor, what the state jury did with that information. That the substantive proof as offered on appeal by the defense is not persuasive. Well, I don't think we can make that, that conclusion. I just, you just can't go say, well, that other jury did it, and therefore it was okay. No, I'm not attempting to use it as the end all, be all, but certainly to say that it is, this is not a case where the evidence we're talking about would substantively clear this defendant. And there are examples in our brief of the types of cases where that happens, with recalcitrant government witnesses, with stories that are changed and someone is exonerated. This isn't that kind of thing. As Judge Hart's, I'm sorry. Did the government concede that this prior inconsistent testimony should have been admitted as substantive proof? Where, Your Honor, we will concede that under Rule 801 D1A, where there is inconsistent testimony, and that prior inconsistent testimony was given under oath, that that can be used for substantive purposes and for impeachment. And that's what happened here. That's the type of testimony we're talking about here? Or you're saying it wasn't? It was under oath, right? Yes. Are you challenging whether it was inconsistent? Yes, in some instances. Part of the danger with the defense is... If it wasn't inconsistent, it shouldn't have been admitted at all then, right? Correct. Well, I mean, it would not know. Let me explain. It's easy in this case to say there were 28 pages of testimony. Here are all the sites. I attempted to go through in working on this brief and show you what those sites showed. In some instances, for all of the victim's testimony, there were problems with the transcript. And a large portion of 28 pages was likely taken up by this confusion over whether it was the official transcript or the transcript the defense had ordered, et cetera. There's no question about the content of the transcripts. The issue about the confusion about the official transcript, it's a red herring. I mean, let's talk about what the defendant's defense was here and how those contradictory statements somehow didn't impact... The defense, Your Honor, we agree that we said in our brief that there was a lot of this attempt to impeach. We do not agree that what the defendant was actually trying to do was prove that what was said by these witnesses in 97 isn't necessarily what happened. We believe they were trying to impeach, not always artfully. Particularly in the earlier parts of this testimony, there was not proper impeachment. Some of these selections from the prior state trial were used to refresh, which were not. Counsel, we're just talking about this case and these particular statements. Yes. And you indicated that, yes, you knew that they should have, that they could be used as substantive evidence. Did you have an obligation during the instruction conference to correct the judge when he said, no, it's just going to be for impeachment? Did you have an obligation as an attorney to point out to him, no, Your Honor, that could be used as substantive evidence? First of all, I'd like to clarify, I was not the trial attorney, but I take your question. It's always better at the discussion of instructions for there to be a give and take between the attorneys and the court over what is actually meant by the instructions and if there is a question about it to discuss it. I have no answer today for why the government did not speak up. Thank you. The only thing that I can tell you is that in this district, as in many districts, there is an informal discussion about the instructions and then you go on the record to make the record. I cannot tell you whether it was discussed informally. I don't know. I do not think that it bars us from discussing it today. And I know it seems I'm pussyfooting around maybe on whether this was true impeachment, whether it was not. But again, the problem of discussing 28 pages in general instead of the individual instances is that where the testimony was offered to attempt to refresh the memory of one of the witnesses, when you refresh a witness's memory, the document that you use to refresh their memory is not admitted into evidence. That's different. Let's just talk about some of the most significant testimony. All right. Let's talk about the materiality of it. As far as whether it corroborated the defense, which is what we're asking here. Yes. And first of all, the child victim testified in the first trial that her mother told her to say the things that she was saying. And I recognize she said it in yes or no answers. Twenty years later, she's much older. She says she remembers and that's not the case. That's highly contradictory. The child's grandmother testifies that Kaswami, the mother of the child, had hostility for months and months before against this particular defendant. She testifies 20 years later. Grandma testifies. Yeah, no, no. That was a recent hostility. There wasn't any of that going on. What about the fact that Blackburn said in 97 that she never, this is grandma again, she never witnessed a child being afraid of the defendant. But she contradicted that 20 years later. Blackburn said in 97 that during the relevant week, the week before, she observed no unusual behavior by the child. She said she'd had nightmares for years and they were no different that week. In 2020, she said, oh, she had these terrible nightmares and this terrible reaction that week. There's a bunch more. Yes. But that's substantive evidence and it's extremely relevant to Mr. McGirt's defense. I don't understand your argument today about impeachment or how this relates to impeachment. This is substantive evidence the jury should have been told they can consider for the truth. I believe that, again, when I keep breaking this down into individual items, I think probably I'm jumping ahead to the harmless error and the weight that it may show. Let's talk about harmless error. Okay. Specifically, first of all, I would encourage the court to look back again at our brief where we attempted to break out the six categories and how we would answer each of those. But your brief just spends many, many pages picking at this evidence and suggesting there's another way the jury could have viewed it. Exactly. That's not, again, that's not the question. The jury was told they couldn't view it for anything other than impeachment. So the fact that maybe had they been told they could, they might have viewed it the way the government wants them to view it is also just seemingly irrelevant. We agree that the jury had the opportunity and should have been instructed that they were able to look at this as substantive evidence. We agree with that. Okay. I guess, again, I think I'm slipping over into the harmless error because we believe that even— As you would normally impeach a witness. Didn't you testify at this time? Do you remember saying this? Et cetera. And I attempted to show in our brief how that went down. Okay. Now, when that was done, the question of the prosecutor, of the attorney, it's not evidence. How did the defense ever say, I'd like that prior statement and get it into evidence? It wasn't that they read the testimony from the prior trial. That was what happened. They read the testimony given questions. So the witness who testified before is in the witness box. And the defense attorney does what? Reads the prior testimony. Didn't you say that before? Is that right? Yes, Your Honor. Okay. Now, did the defense attorney offer that prior testimony into evidence? Because what the prosecutor says is not— That's correct. No, they did not. To the best of—if I'm wrong on that, I apologize. Okay. It has to be corrected, but I don't think they did. Did the witness say, that is what I said before? No. Well, the witness would attempt to explain. Particularly as to the young victim. I'm trying to think. It's remarkable that the judge made this error, frankly. But maybe if it was never offered. And that's very possible, too. I mean, I really do believe that it is, and I thank Your Honor for mentioning that. But was that your argument? The argument, or the point Judge Fartz is raising today, I didn't understand that to be your argument. No. In all honesty, it's not. And I didn't understand that to be— What made me ask the question was you said, sometimes this was offered to refresh the witness's recollection, which is a totally different way of presenting. And we did mention that in our briefs, because there was an allegation that we had— We talked about that part of it. We talked about that allegation when the question from defense counsel was, now, let me try to refresh your recollection. Isn't this what you said before? Were there questions like that? Exactly. It was given, in the course and flow of the trial, as a way to attack the stories that the witnesses were telling on the stand today. That is why I believe the court made this error. That is why I believe that the argument was that you can't believe them. That's not what they said before. They've changed their stories now. And in all honesty, the government case became stronger at the federal trial because we had a 28-year-old, instead of a 4-year-old, describing memories that she testified to stay in her head. The grandmother had changed sides. She stuck by her husband during the first trial. She didn't hear. And the reason she didn't is because the defendant had sent her a letter while he was in state prison admitting that he committed those acts, saying the devil made him do it. And all of those things made our case stronger at the federal trial than it had been back in 1997. When you're looking at non-constitutional error, we have to prove by a preponderance of the evidence that things would not have been different. The jury would not have viewed it differently, even if we had them perform these mental gymnastics. And we believe that it's clear here that the jury, if they'd considered this substantively, the net effect of it would be that you did not believe what the witnesses said in the federal trial. And if you didn't believe those three witnesses in the federal trial, as the judge mentioned early in this argument, they would have acquitted. The subtlety I missed was that the prior statement of one witness, if believed, would not only impeach that witness, it would impeach other witnesses. That's a significant point to me because the judge's instruction forbade that,  that if the grandmother said this and I believe it, then I'm very skeptical of the other two witnesses also. And that's something I had missed and strikes me as very important. Well, it was not argued that way below. But it still, even with that... No. I don't think the defense attorney had an obligation to do anything more than say that's admissible under the rule. That's true. I don't think he has to explain why it's important to him. Particularly when we didn't. No, I agree and I understand. But it seems to me that this is a case where, given the evidence, the way to use this evidence would be to impeach these witnesses and make them unbelievable. It's clear that the court here would not have made a different decision. And as I'd also like to say quickly on the sentencing, that we'd ask the court to look at the very last paragraph that the judge made in his order as to why one point wouldn't have made a difference. We'd ask the court to affirm. Thank you. Does counsel have anything? Okay, you've got a little time left. Mr. Lee. I just want to briefly address Judge Hartz's question about the procedure of all this. Because it is clear that this prior testimony was admitted and it was clear at the time that defense counsel wanted it in as substantive evidence. So here's how it happened. The defense lawyer gave the transcript out, gave the transcript to the judge, gave the transcript to the prosecutor. The transcript showed that this was prior testimony given under oath. Then the defense lawyer would say, didn't you testify previously that your mom told you what to say? And the witness said no. And the defense lawyer said, all right, I am now reading from page 67, lines 20 through 24, questions such and such, answers such and such. And then showed the transcript to the witness and said, did I read the prior transcript correctly? And the witness said yes. So that's how it happened. It was clear. You know, the judge's instruction at the end of the trial